Filed 7/7/25 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ARMANI MILLER,<br><br>        Defendant and Appellant. | A170047<br><br>(Alameda County<br>Super. Ct. No. 617384A)<br><br>**ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT]** |

**BY THE COURT:**        It is ordered that the opinion filed herein on June 27, 2025, be modified as follows:

1. On page 8, in the last full paragraph, after the second sentence beginning with "We disagree" and ending with "theory of felony murder," add the following footnote 6:

    [6]Miller further contends in his supplemental brief that even if charging more than felony murder is required, the prosecution was nonetheless allowed to proceed under a theory in which malice was imputed to him based solely on his participation in the kidnapping because he could not introduce evidence of his youth. We disagree. Under section 1172.6, subdivision (a)(1), Miller had to be charged under a "*theory* of felony murder" that "imputed" malice "*solely*" based on his participation in the kidnapping. (Italics added.) Because the amended information expressly alleged that Miller had to be a major participant in the kidnapping and had to act with reckless disregard for human life, he was not charged under such a theory. Moreover, Miller's interpretation of subdivision (a)(1) would render it superfluous in light of subdivision (a)(3)—which already addresses the

1

evidentiary support for a felony murder conviction. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 ["A construction making some words surplusage is to be avoided"].)

This order does not change the judgment.

Appellant Armani Miller's June 30, 2025 petition for rehearing is denied.

CHOU, J.

WE CONCUR.

JACKSON, P.J.
BURNS, J.

*People v. Miller* (A170047)

*People v. Miller* (A170047)

Trial Court:        Superior Court of the County of Alameda

Trial Judge:        Thomas Stevens

Counsel:        Rudolph J. Alejo, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Jeffrey M. Lawrence, Assistant Attorneys General, Gregg E. Zywicke and Lindsay Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

Filed 6/27/25 (unmodified opnion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br>      Plaintiff and Respondent,<br>v.<br>ARMANI MILLER,<br>      Defendant and Appellant. | A170047<br><br>(Alameda County<br>Super. Ct. No. 617384A) |

Defendant Armani Miller appeals the trial court's denial of his petition for resentencing pursuant to Penal Code[1] section 1172.6. In August 2020, Miller pled no contest to voluntary manslaughter with a firearm use enhancement, and the trial court sentenced him to 16 years in state prison. In May 2023, Miller filed a petition for resentencing. Following a hearing, the court held that Miller failed to make a prima facie case that he was entitled to relief and denied the petition.

On appeal, Miller argues that the trial court erred in denying his petition because he adequately alleged that he could not be convicted of murder based on changes to the felony-murder rule made effective January 1, 2019. Although Miller's plea and conviction occurred after 2019, he contends that he is still eligible for relief based on subsequent cases that recognized

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

4

youth as a factor in determining whether a defendant acted with reckless indifference to human life. We affirm because the charging document against Miller was filed after the felony murder rule was amended. (§ 1172.6, subd. (a)(1).)

## I. BACKGROUND

A. Procedural History

In January 2020, the People filed an amended felony information charging Miller and several codefendants with: (1) murder (§ 187, subd. (a), count one); (2) kidnapping (§ 207, subd. (a), count two); and (3) second degree robbery (§ 211, count three). The amended information alleged that the charges were violent felonies within the meaning of section 667.5, subdivision (c) and that Miller "was a major participant in the [felony kidnapping] and acted with reckless indifference to human life" within the meaning of section 189, subdivision (e)(3).

Later that same month, Miller moved to admit expert testimony regarding adolescent brain development, contending that the testimony was relevant to his state of mind and whether he acted with "reckless indifference to human life."[2] The trial court ruled that Miller could only introduce this evidence if he testified at trial. A few days later, Miller pled no contest to second degree murder. Under the terms of the plea, if Miller testified truthfully at his co-defendants' trial, he would be permitted to withdraw his plea and enter a new plea to voluntary manslaughter.

In August 2020, Miller withdrew his plea for second degree murder and pled no contest to voluntary manslaughter (§ 192, subd. (a)) with a firearm use enhancement (§ 12022.5). The trial court sentenced Miller to the

---

[2] Miller was 18 years old at the time of the offense.

5

midterm of six years for manslaughter and 10 years for the firearm enhancement for an aggregate term of 16 years in state prison.

Miller filed a form petition for resentencing pursuant to section 1172.6 in May 2023. The trial court appointed counsel for Miller and ordered briefing pursuant to section 1172.6, subdivision (c). In its response, the prosecution argued that Miller had not made a prima facie showing for relief because he "pled guilty a year after the changes in the law were made in regards to felony murder" by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437). According to the prosecution, "[a]t the time of the plea, [it was] legally prohibited from presenting a theory of liability in which malice was imputed."

In reply, Miller countered that "[a]t the time of his plea, it was not clear whether youth was a factor relevant to determining whether an aider and abettor was a major participant who acted with a reckless indifference to human life." He continued that recent cases "now recognize that the defendant's youth at the time of the offense should be a factor in determining whether that defendant acted with reckless indifference to human life" and that he "was not allowed to present evidence of this 'relevant factor.' "

At the hearing, defense counsel reiterated that these recent cases were relevant based on the timing of Miller's plea, which occurred three days after the trial court ruled that he could only present evidence of adolescent brain development if he testified at trial. The court denied the petition on the ground that Miller had not met the third element for prima facie relief—that he "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) It reasoned that there would be "no end to [Miller's] argument" if subsequent cases were considered and that he had to show "he could not presently be

6

convicted of murder . . . because of changes that occurred on [January 1, 2019], not case law that occurred several years after that."

B. <u>Facts</u>[3]

"[O]n September 30, 2015, at about 6:20 a.m. a bicyclist discovered the unresponsive victim, 24-year-old John Doe, lying on the ground . . . . The bicyclist observed that the victim was bleeding from the head and called police. . . . The victim was declared deceased at 6:56 a.m. Officers recovered three spent 9mm casings near the victim's body. [¶] Homicide investigators learned that about a week before the murder, . . . Miller, co-defendant Alejandro Garcia, and the 17-year-old juvenile co-participant were shot at and they believed the victim was responsible. They subsequently searched for the victim but failed to locate him.

"In the early morning hours of September 30, 2015, co-defendant [Carlos] Vera was smoking marijuana with a witness . . . . Vera spotted the victim leaving his residence and Vera immediately went to a nearby auto shop. Once there, Vera alerted his friends, . . . Miller, . . . Garcia, co-defendant James Scott, and the juvenile co-participant, who were socializing at the auto shop. Scott had a gun. Miller, Scott, and the juvenile co-participant went to look for the victim. . . .

"Upon finding the victim, Scott brandished his gun while Miller took the victim's money and cell phone. Then, Miller, Scott, and the juvenile co-participant surrounded the victim and walked him at gunpoint about a block and a half toward the auto shop. Co-defendant [Louis] Velasco was on foot when he saw the [other] co-defendants and joined them. . . .

"At the auto shop, Velasco helped tie up the victim while Garcia

---

[3] Our summary of the facts is taken from the probation report, which both parties also adopt as their statement of facts.

7

punched the victim and Scott pistol whipped the victim. Velasco reversed Garcia's Mercedes vehicle into the driveway of the auto shop. Vera directed the witness to drive his vehicle to the auto shop.

"Garcia and the juvenile co-participant were successful in their attempts to place the victim in the trunk of the Mercedes. Miller and Scott put the victim in the trunk, as the latter continued to pistol whip the victim. Vera told the group to follow him because he knew where to go. With the exception of Velasco and Miller, the co-defendants left the auto shop. Velasco stayed behind and cleaned the auto shop with bleach and other products, and Miller left the area.

"Vera was in the witness' vehicle. Garcia, Scott and the juvenile coparticipant were in the Mercedes and followed the witness' vehicle. At some point, . . . Vera took the wheel of the witness' vehicle and led them all to a location in the Oakland hills. While en-route, Scott and the juvenile coparticipant argued over who was going to shoot the victim. Upon arrival, all of the co-defendants [(with the exception of Velasco and Miller)] and the witness stood around as the trunk of the Mercedes was being opened. The witness returned to his vehicle. Scott took the victim away from the road and shot him three times in the head. . . ."

## II. DISCUSSION

Miller contends that the trial court erred in dismissing his section 1172.6 petition at the prima facie stage. Specifically, he contends that although he pled guilty *after* Senate Bill 1437 went into effect, he could not presently be convicted of murder under section 1172.6, subdivision (a)(3) because recent cases have now recognized that youth is a relevant factor in determining whether a defendant was a major participant in the underlying

8

felony and acted with reckless indifference to human life.[4]  Miller, however, ignores a more basic barrier to his claim for relief:  The amended information was filed *a year after* the felony murder rule was amended by Senate Bill 1437.  Accordingly, Miller cannot establish a prima facie case for relief because he cannot, as a matter of law, meet the first element under section 1172.6, subdivision (a)(1).[5]

A.  <u>Law and Standard of Review</u>

Effective January 1, 2019, the Legislature passed Senate Bill 1437 to " 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'  ([Stats. 2018, ch. 1015, § 1,] subd. (f).)" (*People v. Gentile* (2020) 10 Cal.5th 830, 846–847.)  Among other things, Senate Bill 1437 added section 189, subdivision (e), which "limits liability under a felony-murder theory principally to 'actual killer[s]' (Pen. Code, § 189, subd. (e)(1)) and those who, 'with the intent to kill,' aid or abet

---

[4] To the extent Miller challenges the trial court's exclusion of his expert testimony regarding youth, he has waived it.  (*People v. Turner* (1985) 171 Cal.App.3d 116, 125 ["a plea of guilty waives any right to raise questions regarding the evidence, including its sufficiency or admissibility"].)

[5] Because neither party discussed section 1172.6, subdivision (a)(1), we requested and received supplemental briefing as to whether this first prima facie element has been met, given that that the amended information was filed in January 2020.  We note that the People's position in their supplemental brief is less than clear.  At the outset of the brief, the People appear to concede that Miller satisfied the first element.  But at the end of the brief, the People appear to assert that Miller did not.  Regardless of whether the People conceded this issue, we are not bound by that concession. (*People v. Kimble* (2024) 99 Cal.App.5th 746, 749 ["As a general rule, we are not bound by concessions made by the People in a criminal case"].)

'the actual killer in the commission of murder in the first degree' (*id.*, subd. (e)(2)). Defendants who were neither the actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life' " under section 189, subdivision (e)(3). (*People v. Strong* (2022) 13 Cal.5th 698, 708.)

Senate Bill 1437 also created what is now section 1172.6, which outlines the procedure for defendants convicted of murder to petition for resentencing in the trial court if they believe they could no longer be convicted of murder based on the amendments to section 189. (Stats. 2018, ch. 1015, § 4.) If the trial court determines that the petitioner has made a prima facie showing for relief, it must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subd. (c).)

"In ascertaining whether a defendant has made a prima facie case for relief, the trial court may look at the record of conviction, which will necessarily inform its 'prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless.' " (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.) We "review de novo whether the trial court conducted a proper [prima facie] inquiry under section 1172.6, subdivision (c)." (*Ibid.*)

B. Prima Facie Showing

A petitioner must meet the following threshold elements at the prima facie stage: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . . [¶] (2) The petitioner was convicted of

10

murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

To meet the first requirement (§ 1172.6, subd. (a)(1)), "the charging document filed against [a defendant] must have allowed the prosecution to proceed under a theory of murder liability that is now invalid." (*People v. Reyes* (2023) 97 Cal.App.5th 292, 298 (*Reyes*).) Here, the amended information was filed in January 2020 and alleged, as to felony murder, that Miller "was a major participant in the [felony kidnapping] and acted with reckless indifference to human life" within the meaning of section 189, subdivision (e)(3). The charging document therefore did not allow the prosecution to proceed under the old invalid theory of felony murder. In *Reyes*, the Court of Appeal similarly held that the defendant was ineligible for relief because at the time the information was filed in 2020, "the prosecution was precluded from proving the murder charge under a theory of imputed malice." (*Reyes*, at p. 298.)

In his supplemental brief, Miller contends that he qualifies for relief because he was charged with felony murder, which is all that is required under section 1172.6, subdivision (a)(1). We disagree, as "felony murder" under this section refers to the old and now abolished theory of felony murder. We apply two well-established canons of statutory interpretation in reaching this conclusion.

The first, " '[*n*]*oscitur a sociis* ("it is known by its associates") is the principle that " ' "the meaning of a word may be enlarged or restrained by reference to the object of the whole clause in which it is used." ' " [Citations.]'

11

[Citation.] In other words, 'a word takes meaning from the company it keeps.' [Citation.] ' "In accordance with this principle of construction, a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list." ' " (*Kaatz v. City of Seaside* (2006) 143 Cal.App.4th 13, 40 (*Kaatz*).)

The second, *ejusdem generis*, "explains that, when a particular class of things modifies general words, those general words are construed as applying only to things of the same nature or class as those enumerated." (*People v. Arias* (2008) 45 Cal.4th 169, 180.) And "when a statute contains a list or catalogue of items, a court should determine the meaning of each by reference to the others, giving preference to an interpretation that uniformly treats items similar in nature and scope." (*Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1011–1012 (*Moore*).)

Based on the canons of *noscitur a sociis* and *ejusdem generis*, the term "theory of felony murder" under section 1172.6, subdivision (a)(1) must be interpreted in the context of the other listed items in that subdivision. The two other theories in the subdivision are "the natural and probable consequences doctrine" and any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (*Id.*, subd. (a)(1).) Senate Bill 1437 abolished liability for murder under both those theories. (Stats. 2018, ch. 1015, § 4.) Interpreting "felony murder" to include the presently *valid* theory of amended felony murder renders the term ' " 'markedly dissimilar to the other items in the list.' " ' (*Kaatz, supra*, 143 Cal.App.4th at p. 40.) Confining its meaning to only the pre-Senate Bill 1437 theory of felony murder, on the other hand, results in a preferred

12

interpretation that treats all three theories similarly—as now invalid theories of murder liability. Finally, the catchall reference at the end of section 1172.6, subdivision (a)(1) to any "*other* theory" confirms that the defendant must be charged with a "theory of felony murder" that imputes malice "to a person based solely on that person's participation in a crime." (Italics added.)

Accordingly, Miller is ineligible for relief under section 1172.6, subdivision (a)(1) because the amended information was filed in January 2020 and did not allow the prosecution to proceed under the now abolished theory of felony murder that imputed malice "based solely on" Miller's "participation in" the kidnapping.

## III.  <u>DISPOSITION</u>

The order denying Miller's section 1172.6 petition is affirmed.


CHOU, J.


WE CONCUR.

JACKSON, P. J.
BURNS, J.


*People v. Miller* (A170047)

13

*People v. Miller* (A170047)

Trial Court:  Superior Court of the County of Alameda

Trial Judge:  Thomas Stevens

Counsel:   Rudolph J. Alejo, under appointment by the Court of Appeal, for Defendant and Appellant.

     Rob Bonta, Attorney General, Lance E. Winters and Jeffrey M. Lawrence, Assistant Attorneys General, Gregg E. Zywicke and Lindsay Thompson, Deputy Attorneys General, for Plaintiff and Respondent.